# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JOHN SMITH,                       )

                                 )

        Appellant,            )

                                 )

          v.                   )

                                 )    C.A. No. 17I-01070

STATE OF DELAWARE,      )

                                 )

        Appellee.           )

                                 )

## ORDER

Date Submitted: February 12, 2018
Date Decided: March 28, 2018

Appellant, John Smith ("Mr. Smith")[1] filed an Appeal of Commissioners' Findings of Fact and Recommendations based on an October 11, 2017 and October 18, 2017 Orders. The Commissioner found probable cause to involuntarily commit Mr. Smith. Mr. Smith appealed the Commissioners' Orders, and for the foregoing reasons this Court **AFFIRMS**.

## Finding of Fact

Mr. Smith is a client with Connections Community Re-Integration Support Program ("CRISP"), and he resides at an apartment in New Castle, Delaware ("the apartment"). On September 26, 2017, Mr. Smith was at the apartment with his

---

[1] In the interest of confidentiality, the Court has given Appellant a fictitious name.

roommates: Roommate 1 and Roommate 2. Roommate 2 is employed by Connections as a Residential Aide, and he was working his 12:00 A.M. to 8:00 A.M. shift. Roommate 2 alleged that between 5:00 A.M. and 8:00 A.M. Roommate 2 believed that Mr. Smith was working out in his bedroom because he heard loud noises coming from Mr. Smith's bedroom. Roommate 2 saw Mr. Smith exit his bedroom and he began punching the wall, getting angry and agitated. Mr. Smith then went back into his room and Roommate 2 stated that the noises got louder. Mr. Smith re-emerged from his bedroom carrying a weight. Roommate 2 testified that Mr. Smith was "not trying to harm himself," but he was "amping himself up." At this time Roommate 2 began looking for Mr. Smith's case manager's number. Roommate 2 then heard sounds of a lighter striking and saw Mr. Smith's arm reach out his bedroom door and drop burning paper towels onto the floor. Roommate 2 extinguished the burning paper towels and Mr. Smith shut his bedroom door. Mr. Smith began yelling about his family and that he did not want to live anymore. Roommate 1 heard the noise and came out of his room and asked what was going on. Roommate 2 also stated that the next-door neighbor knocked on the door due to the noise and spoke with Roommate 1. New Castle County Police arrived at the apartment around 7:00 A.M. in response to a phone call made by the neighbor. Roommate 2 was on the phone with Mr. Smith's case manager, and Roommate 2 showed the officer the burnt paper towels. The case manager told Roommate 2 to

2

give the phone to the police officer. At the request of Mr. Smith's case manager, the officer completed section one of the 24-hour Detention Form. Mr. Smith was taken to the Christiana Hospital Emergency Room and was seen by Gregory Wanner, D.O. Dr. Wanner assessed Mr. Smith and determined that he met the standard for the 24-hour emergency detention because he experienced symptoms of mental illness and was a danger to himself and others. Dr. Wanner completed sections two through four of the 24-hour emergency detention form.

On September 27, 2017 Mr. Smith was admitted to Delaware psychiatric Center ("DPC"). On the Psychiatrist's Certificate Daniel Grimes, M.D. listed aggression, yelling, pressured speech, severely psychotic, tangential, delusional, poor insight and judgment, and racing thoughts, as his behavioral observations. On September 29, 2017, when the 48-hour provisional period expired, Dr. Grimes submitted an Affidavit of Treatment Provider in Support of Involuntary Inpatient Commitment. Dr. Grimes observed that Mr. Smith was a danger to himself and others. Dr. Grimes also submitted an Affidavit of Treatment Provider in Support of Outpatient Treatment Over Objection. In this affidavit Dr. Grimes wrote that Mr. Smith had an extensive history of multiple psychiatric hospitalizations for psychosis, mania, depression, violent/assaultive behavior, and Mr. Smith had a history of non-compliance with medication.

The State filed a Complaint on October 3, 2017 in which it sought involuntary inpatient commitment of Mr. Smith and involuntary outpatient treatment over objection on behalf of DPC. On October 4, 2017 a probable cause hearing was held before a Commissioner. The hearing was continued in order for additional witnesses to be present. On October 11, 2017 the probable cause hearing was held, and the court found that there was probable cause to involuntarily commit Mr. Smith for inpatient treatment. Additionally, an 8-day hearing, intended as a continuation of the initial hearing, was scheduled for October 18. 2017. Subsequently, on October 19, 2017, Mr. Smith appealed the October 11 and October 18 Orders. Mr. Smith was appointed counsel, and the parties were given time to receive and review copies of the hearing transcripts. Mr. Smith's brief was filed on January 26, 2018 and the State's Response was filed on February 12, 2018. In the time between Mr. Smith's initial commitment and the briefing deadlines, Mr. Smith was determined to be psychiatrically stable and is no longer an involuntary inpatient. Mr. Smith is currently in involuntary outpatient treatment.

## Parties Contentions

Mr. Smith argues that the 24-Hour Emergency Detention did not meet the requirements of 16 *Del. C.* § 5004(a). Mr. Smith argues that § 5004(a) requires that an officer must provide "in writing . . . a description of the behavior and symptoms observed by the peace officer which led him or her to conclude that another person's

behavior is both the product of a mental condition and is dangerous to self or dangerous to others." Mr. Smith contends that the officer who arrived at the apartment did not describe personal observations on section one of the emergency detention form. Mr. Smith also contends that he was not present at the apartment during the alleged incident with the burnt paper towels, and the officer did not have any personal observations or record of Mr. Smith's behavior to suggest that Mr. Smith was a danger to himself or others. Additionally, Mr. Smith contends that the 24-Hour Emergency Detention form fails pursuant to 16 *Del. C.* § 5004(b) because Dr. Gregory Wanner did not provide a rationale for detention, including specific information about Mr. Smith's alleged mental condition and alleged dangerous behaviors. Mr. Smith argues that Dr. Wanner's portion of the 24-Hour Emergency Detention form states "Please see attached comprehensive assessment," and it was not included in the October 2, 2017 complaint. Mr. Smith also contends that he was denied his right to summon and cross examine witnesses, the Commissioner abused his discretion in not granting a continuance at the October 11 hearing, and there were pleading defects in the initial involuntary commitment pleadings which require this Court to vacate the Commissioners' Orders. Finally, Mr. Smith argues in the alternative that the Commissioner erred in finding by clear and convincing evidence that Mr. Smith was a danger to himself or others.

5

The State contends that the 24-Hour Emergency Detention form is compliant with the applicable Delaware statutes. Additionally, the State contends that Mr. Smith was not denied his right to summon and cross examine witnesses because there were witnesses present at the October 11 hearing, and the October 4 hearing was continued at his request. Similarly, the State argues that the Commissioner did not abuse his discretion when he denied Mr. Smith a continuance at the October 11 hearing. Finally, the State avers that there are no defects in the initial pleadings which would allow this Court to vacate the Commissioners' Orders, nor did the Commissioner err in finding probable cause and clear and convincing evidence to involuntarily commit Mr. Smith to involuntary inpatient and outpatient care. The State also argues as a procedural aspect, because Mr. Smith is no longer in involuntary inpatient due to his discharge, his appeal of the involuntary inpatient commitment is now moot. The State contends that the only issue for the Court to determine with whether the Commissioner erred in finding that the State met its burden by clear and convincing evidence that Mr. Smith required involuntary outpatient treatment over objection.

## Standard of Review

Superior Court Civil Rule 132 provides the powers and duties imposed upon Commissioners in this State. Specifically, Rule 132 (a)(4) provides that Commissioners have the power to conduct case-dispositive hearings, which includes

6

mental hearings pursuant to Title 16 Del. C., ch. 50.[2] This Court "shall make a de novo determination of those portions of the report or specified proposed findings of fact or recommendations made by the Commissioner."[3]

## Discussion

At the onset, the Court finds that the Commissioners'[4] October 11 and October 18 Orders are **AFFIRMED.** The Court addresses each of Mr. Smith's arguments, and the State's Response, below.

### A. The Procedural Requirements of 16 *Del. C.* § 5004.

Pursuant to 16 *Del. C.* § 5004, "[a]ny person who believes that another person's behavior is both the product of a mental condition and is dangerous to self or dangerous to others may notify a peace officer or credentialed mental health screener . . . and request the assistance for said person."[5] Once a police officer or credentialed mental health screener observe "that such individual with an apparent mental condition likely constitutes a danger to self or danger to others, such person with an apparent mental condition shall be promptly taken into custody for the purpose of an emergency detention by any peace officer in the State without the

---

[2] Super. Ct. Civ. R. 132 (a).
[3] Super. Ct. Civ. R. 132 (a)(iv).
[4] The Court notes that the October 4, 11, and 18 hearing were presided over by three separate Commissioners.
[5] 16 *Del. C.* § 5004(a).

7

necessity of a warrant."[6] Additionally, "such observation shall be described in writing and shall include a description of the behavior and symptoms which led the peace officer or credentialed mental health screener . . . to such conclusion."[7] "An individual may be held on an emergency detention if it reasonably appears to a credentialed mental health screener . . . that the person is acting in a manner that appears to be dangerous to self or others. The credentialed health screener . . . shall verify this finding in writing and complete the Department-approved emergency detention form."[8] As a requirement under § 5004(b), the documentation shall include the screener's "rationale for the detention, including specific information regarding the alleged mental condition and dangerous behaviors observed."[9]

Here, Mr. Smith's main argument is that the State failed to satisfy the requirements under 16 *Del. C.* § 5004. Mr. Smith argues that the portion of the detention form filled out by the responding officer does not contain any personal observations. Essentially, Mr. Smith argues that the form was filled out based on hearsay because the officer did not witness the initial incidents reported by Roommate 2. The Court is not persuaded by Mr. Smith's argument. The statute is not as restrictive as Mr. Smith claims. Here, a neighbor called the police to the

---

[6] 16 *Del. C.* § 5004(a).
[7] 16 *Del. C.* § 5004(a).
[8] 16 *Del. C.* § 5004(b).
[9] 16 *Del. C.* § 5004(b).

apartment. Once the officer was inside the apartment, Roommate 2 showed the officer the paper towels and put the officer on the phone with Mr. Smith's case worker. The officer filled out the emergency detention form indicating that Mr. Smith met the requirements as a danger to himself and a danger to others. The officer stated in Section I:

> [Mr. Smith] was found this morning burning paper towels in his apartment. Neighbors contacted police due to the smell of the burning. [Mr. Smith] is a connections patient and suffers from mental health disorders. [Mr. Smith's] R.A., [Roommate 2], advised [Mr. Smith] stated he doesn't care about himself after he was burning paper.

The Court is satisfied that the requirements under 16 *Del. C.* § 5004 are met with regard to the police officer. Once the officer was inside the apartment, he was in contact with Mr. Smith's case manager on the telephone. He was also in contact with Roommate 2 who was explaining the events that occurred in the apartment. Based on these observations, the officer determined that Mr. Smith "likely constitutes a danger to self or danger to others" under 16 *Del. C.* § 5004(a). The Court is also not persuaded by Mr. Smith's argument that the 24-Hour Emergency Detention Form fails to meet § 5004(b). Mr. Smith argues that Dr. Wanner did not provide a rationale for Mr. Smith's detention when he wrote "Please see attached comprehensive assessment" which was not included as part of the initial complaint. Pursuant to section 5004(b) the documentation by Dr. Wanner was to include his "rationale for the detention, including specific information regarding the alleged mental condition

9

and dangerous behaviors observed."[10] In Section II of the form Dr. Wanner checked the box "YES" that Mr. Smith was displaying behaviors meeting the criteria for a mental health condition, defined on the form as "a current, substantial disturbance of thought, mood, perception or orientation which significantly impairs judgment, capacity to control behavior or capacity to recognize reality." Below the box checked "YES," the form says "as described here (and/or in SECTION 1, on page 1 and 2 of this form, above)." Written below the box on the lines provided Dr. Wanner states: "Please see attached comprehensive assessment." This is the language that Mr. Smith takes issue with. The Court is not persuaded by this argument because the form clearly defines what a mental health condition is, and what a mental health condition is not.

## B. The Right to Summon and Cross-Examine Witnesses under 16 *Del. C.* § 5007(4).

Mr. Smith was not denied his right to summon and cross-examine witnesses under Delaware law. The applicable statute, 16 *Del. C.* § 5007(4), states an individual at a probable cause hearing for involuntary commitment is entitled to "conduct discovery, to summon and cross-examine witnesses, to present evidence on the person's own behalf and to avail the individual's own self of all other procedural rights afforded litigants in civil causes. The privilege against self-

---

[10] 16 Del. C. § 5004(b).

incrimination shall be applicable to all proceedings under this chapter." Mr. Smith's initial probable cause hearing was scheduled for October 4, 2017. Mr. Smith's counsel for the hearing attempted to secure his case manager as a witness and a nurse practitioner employed by Connections. The nurse did not show up to the hearing even though she was subpoenaed, and Mr. Smith chose to continue the hearing. The hearing was continued to October 11, 2017. Mr. Smith's current counsel argues that because "court appointed attorneys in civil commitment hearings operate on a rotating calendar, the attorney appointed to represent [Mr. Smith] at the October 11, 2017 probable cause hearing was unfamiliar with the events at the October 4, 2017 proceeding and unaware of the exigent circumstances and the need to subpoena" Mr. Smith's case manager and the Connections nurse. Mr. Smith argues that neither showed on October 11, 2017 hearing date. Based on these facts Mr. Smith argues that he was denied his right to summon witnesses for his probable cause hearings, and there was no witness to impeach Roommate 2's testimony, the "only witness to the incident."

The Court does not believe that Mr. Smith's rights were violated. Pursuant to 16 *Del. C.* § 5009(1), a civil commitment hearing must be held no later than 8 working days from the filing of the complaint.[11] Based on the record before the Court, Mr. Smith was given the opportunity to present the witnesses. One did not

---

[11] 16 *Del. C.* § 5009(1).

11

show at the October 4 hearing, and based on his request the hearing was continued. However, from reading the transcript of the October 4 hearing, it does not seem that the hearing was continued to solely secure Mr. Smith's witnesses. Rather, the Commissioner continued the hearing because Roommate 2 was not available to testify to firsthand knowledge of the events, and the nurse practitioner was also not present. At the end of the October 4 hearing Mr. Smith's attorney stated that he would notify the attorney for the following week as to the subpoena attempt of the witnesses so that appropriate efforts could be made. At the October 11 hearing, Mr. Smith's counsel stated on the record that his office attempted to contact Mr. Smith's case worker before the October 11 hearing and he was unable to do so. Additionally, the State provided an affidavit that the nurse practitioner was in fact present at the October 11 hearing until she was excused at the conclusion of the hearing. Based on these facts Mr. Smith's right to summon and cross examine witnesses was not violated.

**C. Presence of Rebuttal Witnesses at Mr. Smith's October 11, 2017.**

Mr. Smith argues that the Commissioner abused his discretion when he denied Mr. Smith's request for a continuance when his witnesses were not present at the October 11 hearing. As stated above, Mr. Smith's counsel stated on the record that his office attempted to contact Mr. Smith's case manager and the attempt was unsuccessful. Additionally, based on the transcript, the Commissioner did not abuse

12

his discretion in denying Mr. Smith a continuance. First, Mr. Smith's counsel did not request a continuance at the October 11 hearing. Mr. Smith himself continued to interrupt the Commissioner, his counsel, and others attempting to speak at the hearing. Eventually the Commissioner found that due to Mr. Smith's behavior during the hearing he forfeited his right to be present for the remainder of the hearing. Additionally, as stated above, the State provided an affidavit that the nurse practitioner was present on October 11 to testify at the hearing. Based on the record before the Court the Commissioner did not abuse his discretion when he did not continue the October 11 hearing.

## D. Defects in the Initial Pleadings and Probable Cause Hearing

The Court finds that there were no defects in the pleadings. Mr. Smith's argument is essentially repeating his first argument: that the procedural requirements under 16 *Del. C.* §§ 5004-5005, 5008, and 5009 were violated. However, as discussed above, the Court found that the complaint was compliant with the applicable statutes. Additionally, Mr. Smith received notice, a hearing, was represented by counsel, and had the right to cross-examine witnesses, and had notice of the right to appeal.

## E. The Commissioner Did Not Err in Finding By Clear and Convincing Evidence that Mr. Smith was a Danger to Himself or Others.

13

Mr. Smith argues that the evidence before the Commissioner did not meet the clear and convincing evidence standard required under 16 *Del. C.* § 5011(a). Pursuant to 16 *Del. C.* § 5011, the State must demonstrate by clear and convincing evidence that the individual is a person with a mental condition, the individual is a danger to self or others, that all less restrictive alternative treatments have been deemed clinically inappropriate, and the individual declined voluntary treatment or lacks capacity to consent to inpatient treatment.[12] Under the statue, "dangerous to others means that by reason of mental condition there is a substantial likelihood that the person will inflict serious bodily harm upon another person within the immediate future."[13] Additionally, this determination "shall take into account the person's history, recent behavior and any recent act or threat."[14] First, as noted in the October 11 transcript, Mr. Smith had a history of engaging in conduct that was dangerous to others. At the hearing Dr. Grimes testified that Mr. Smith was admitted eight times in the last three years because of mania and psychosis which led him to become "repeatedly violent." Roommate 2 testified to the events that led up to the police being called, which included setting fire to paper towels and Mr. Smith's behavior that morning inside the apartment. Dr. Grimes testified that while in the hospital, other patients requested to be moved from the unit because they were fearful of Mr.

---

[12] 16 *Del. C.* § 5011(a).
[13] 16 *Del. C.* § 5001(3).
[14] 16 *Del. C.* § 5001(3).

Smith because he had "extreme agitation," and made fists and flexed his muscles. At the October 18 hearing, Dr. Grimes testified that Mr. Smith's symptoms included irritable mood, frequently angry, hostile shouting at anyone who comes into contact with him, and "he has the delusional belief that he is infected with E. Coli." As the State discusses in its Response, three Commissioners had the ability to interact with Mr. Smith and the witnesses before them. At the October 11 hearing the Commissioner found that Roommate 2's testimony was credible, as the police were at the apartment after the incident, the police filled out a report and they took the paper towel into evidence. Based on the testimony before the Commissioners, and Mr. Smith's prior history and behavior, the Court is satisfied that the clear and convincing evidence standard was met to conclude that Mr. Smith was a danger to himself or others. For the aforementioned reasons, the Commissioners' October 11 and October 18 Orders are **AFFIRMED**.

   **IT IS SO ORDERED.**

_____

**Judge Calvin L. Scott, Jr.**